UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES ANTWUAN MCCANTS,

     Plaintiff,

v.                                                                         Case No. 8:17-cv-175-VMC-AEP

WILLIAM J. JORDAN,
DAWON TAYLOR,
DARIEL KINSLEY,
SEAN DZIUBINSKI,
EDWIN BELVIS,
CHRISTINE CUTTITTA,
CAPTAIN MOYER, and
SHERIFF'S OFFICE ADMINISTRATIVE
INVESTIGATION DIVISION,

     Defendants.
_____/

## **ORDER**

This cause comes before the Court on the following motions: Motion for Summary Judgment of the Sheriff's Office Administrative Investigation Division (Doc. 93), Motion for Summary Judgment of Captain Amy Moyer, Lt. Christine Cuttitta, and Det. Edwin Belvis (Doc. 94), and Motion for Summary Judgment of Sergeant Dziubinski and Deputies Jordan, Taylor, and Kinsley (Doc. 95). Plaintiff Charles Antwuan McCants responded (Docs. 97 and 99), and the defendants replied (Doc. 102). For the foregoing reasons, the summary judgment motions must be granted.

# I.   BACKGROUND

Plaintiff Charles Antwuan McCants filed this 42 U.S.C. § 1983 suit, claiming that his constitutional rights were violated when deputies used excessive force against him, while he was a pretrial detainee in the Pinellas County Jail.  He claims that deputies lied during a subsequent investigation, which resulted in criminal charges against him.  McCants proceeds on his amended complaint.[1]

## A.   Events of January 21, 2016

On January 21, 2016, McCants was being escorted, without handcuffs, by deputies Jordan, Taylor, and Kinsley, from one housing unit to another in the jail. During the transfer, McCants was walking down a hallway carrying his belongings bundled in a blanket.  McCants was being moved to another housing unit as a disciplinary measure for an incident that is unrelated to this lawsuit.[2]

---

[1] The Court granted McCants leave to file a second amended complaint; however, he failed to do so. (Doc. 44)  Therefore, the case proceeds on the amended complaint. (Doc. 31)

[2] The events of January 21, 2016 were captured on jail cameras.  The record contains a DVD with four videos that show the time periods before, during, and (presumably) after the use of force.  The videos do not contain audio recordings.  Video 640 (from the hallway camera, before the use of force) shows McCants exiting a cell and carrying a large bundle of his belongings, while being escorted down the hallway by Dep. Jordan.  Video 591 (from the table camera, before the use of force) shows Dep. Jordan unwrap the bundle on a table and search through its contents for contraband, while McCants and Deputies Taylor and Kinsley stand nearby.  McCants then picks up the bundle and returns to the hallway, while being escorted by the deputies.  Video 707 (from the hallway camera) shows McCants drop the bundle, and the use of force that is the subject matter of this case follows.  (Video 707 was played frame-by-frame at McCants's deposition.  McCants testified about the events in Video 707, and that transcript is a part of the record.)  Finally, Video 739 shows the jail cells (presumably) after use the use of force; no relevant events occur on Video 739.

As he was being escorted, McCants was engaged in a heated verbal exchange with Dep. Jordan.[3]  Doc. 94-2 at 30–35; Video 707 at 0:00–0:10.  McCants testified that he was "worked up" and told Dep. Jordan to "stop antagonizing me."  Doc. 94-2 at 31.  Deputies Taylor and Kinsley were not involved in this verbal exchange and did not say anything to McCants.  *Id.* at 35–36.

Before entering the hallway, Dep. Jordan pointed and gestured at least nine times in the direction McCants was to walk.  Video 591 at 7:30–8:00.  After entering the hallway, Dep. Jordan pointed three times down the hallway, in the direction they were walking.  Video 707 at 0:02–0:09.  McCants then stopped walking and dropped his bundle on the ground.[4]  Video 707 at 0:10; Doc. 94-2 at 26 and 47.  McCants then turned and faced Dep. Jordan.  Video 707 at 0:13; Doc. 94-2 at 27 and 47.  Dep. Jordan instructed McCants to pick up his belongings, and McCants did not comply.  Doc. 94-2 at 27.  Dep. Jordan warned McCants that he was going to "count down," if McCants refused to pick up his belongings.[5]  Doc. 94-2 at 50 and 52.  Dep. Jordan and McCants continued the heated verbal exchange.  Doc. 94-2 at 47–49.

---

[3]  McCants contends that they were arguing about an event that occurred months earlier.  The record shows that, on September 7, 2015, McCants provided a witness statement to prison authorities, as a part of an excessive force investigation, in which he reported that Dep. Jordan "went in and tasered [another inmate]; I think he was sleep [sic]."  Doc. 99-1 at 7.  McCants claims that Dep. Jordan's use of excessive force against him on January 21, 2016 was in retaliation for providing that witness statement.  Doc. 94-2 at 11 and 23.

[4]  At this point, Deputies Taylor and Kinsley were standing behind McCants, while Dep. Jordan stood next to McCants.  Video 707 at 0:10; Doc. 94-2 at 44.

[5]  The defendants contend that Dep. Jordan repeatedly commanded McCants to turn and face the wall so he could be handcuffed; however, McCants denies this fact.  Doc. 94-2 at 27.  The Court views this factual dispute in McCants's favor.

Approximately fourteen seconds passed from when McCants dropped his belongings on the ground until the use of force occurred.  Video 707 at 0:10–0:24.

Dep. Jordan and McCants both leaned in towards each other.  Video 707 at 0:15–0:22; Doc. 94-2 at 61.  Dep. Jordan repeatedly raised his hands and gestured toward McCants.  Doc. 94-2 at 55.  Next, Dep. Jordan reached for McCants's upper body with two open hands, in an attempt to turn McCants around.  Video 707 at 0:23–0:25; Doc. 94-7 at 3.  In response, McCants raised both his hands toward Dep. Jordan.  *Id.*

The two then began to grapple.  *Id.*  Dep. Jordan swung at and missed McCants with his closed fist.  *Id.*  After Dep. Jordan's initial fist strike missed, he landed five closed-fist strikes on McCants.  Video 707 at 0:25–0:29.  The two continued to be "tangled up," when Deputies Taylor and Kinsley tried to take hold of McCants.  Doc. 94-2 at 79.  Deputies Jordan and Taylor delivered multiple knee strikes to McCants's torso.  Doc. 94-7 at 3–4.  Dep. Kinsley "took control of McCants's left arm and attempted to redirect him to the floor."  Doc. 94-7 at 4.

Sgt. Dziubinski appeared on the scene, walking towards the deputies and McCants, after McCants dropped his belongings, but moments before the use of force began.  Video 707 at 0:19.  Throughout the struggle, Sgt. Dziubinksi remained close by the deputies as they tried to take hold of McCants.  At one point, he unholstered and activated his taser.  However, due to the close proximity of the deputies and McCants, he could not safely deploy it without striking the deputies, so he powered his taser off, and re-holstered it.  Video 707 at 0:29–0:38; Doc. 94-3 at 7.

The deputies remained entangled with McCants as they all fell to the ground. Video 707 at 0:35.  Deputies Jordan and Taylor both deployed their taser during the struggle.  Doc. 94-7 at 3–4.  McCants eventually complied with orders to place his hands behind his back, Deputy Kinsley secured him with handcuffs and shackles, and he was placed into a restraint chair.  Video 707 at 0:35 to 0:45; Doc. 94-7 at 4. The duration of the use of force was about twenty seconds.  Video 707 at 0:24–0:45. Afterwards, McCants was evaluated by medical personnel, and his face and back were photographed.  Doc. 94-7.

### B.   McCants's Grievances and the Investigations into the Events of January 21, 2016

Sgt. Dziubinski and Deputies Jordan, Taylor, and Kinsley (along with two lieutenants and a deputy who are not parties to this suit) completed a three-page report of the incident.  Doc. 94-7.  In the report, Jordan, Kinsley, and Dziubinski (but not Taylor) each state that McCants hit Dep. Jordan in his right eye with a closed fist.  Doc. 94-7 at 3–4.  Later in the day on January 21, Dep. Jordan wrote McCants a disciplinary referral for assault and battery.  Doc. 94-7 at 3.  A disciplinary committee later conducted a hearing, during which McCants denied hitting anyone.  Doc. 95-1 at 3–12.  The committee found McCants guilty and imposed 30-days disciplinary confinement with loss of privileges.  *Id.*

On January 23, McCants submitted a grievance and request for administrative remedy.  He complained that Dep. Jordan assaulted him on January 21 in retaliation

for his earlier witness statement against the deputy.  He sought to be placed in protective custody and requested that Dep. Jordan be arrested and fired. Doc. 94-3 at 10.

On January 25, a sergeant (who is not a party to this suit) investigated and responded to the grievance.  In the written response, the sergeant stated that McCants "failed to relocate as instructed" and "refus[ed] to comply with staff's orders to be secured in handcuffs."  As a result, "physical force was utilized to gain [McCants's] compliance."  Also, McCants's claim that Dep. Jordan was insulting him and cursing could not be validated.  Capt. Moyer signed the response as the division commander.  Doc. 94-3 at 11.

On January 26, McCants submitted another grievance and request for administrative remedy.  He complained that Dep. Taylor assisted in assaulting him and requested that Dep. Taylor be arrested and fired.  Doc. 94-3 at 12.

Also on January 26, the Administrative Investigations Division ("AID") received a complaint by email from McCants's mother, claiming that McCants had been beaten "by the guards."  Doc. 94-3 at 16.  Lt. Christine Cuttitta, who was the division commander of AID, assigned a sergeant in the division to investigate the complaint.  Doc. 94-6 at 1–3.  The AID investigation into McCants's mother's complaint involved examining reports, photographs, videos, medical records, and other jail records, as well as interviewing McCants.  *Id.* at 2.  The AID later

concluded that the use of force was justified and that there was no evidence that any officer violated policy.[6]  *Id.* at 3.  Lt. Cuttitta approved this conclusion.  *Id.* at 2.

On January 29, a sergeant investigated and responded to the January 26 grievance, concluding that McCants's complaints were unfounded.  Capt. Moyer again signed the written response, noting that "using the grievance process is not the appropriate way to pursue criminal charges."  Doc. 94-3 at 13.

On February 4, McCants submitted an appeal from the denial of his previous grievance against Dep. Jordan.  He again complained that Dep. Jordan hit him in retaliation for his witness statement against Dep. Jordan, and he denied hitting Dep. Jordan on January 21.  He again requested that Dep. Jordan be fired and requested medical treatment for his back injury.  On March 10, McCants was notified that "[his] complaint was under review by AID."  Doc. 94-3 at 14.

On March 22, McCants submitted another grievance and request for administrative remedy.  In this grievance, he complained that Sgt. Dziubinski lied in his report when he stated that he witnessed McCants hit Dep. Jordan, he and requested that Sgt. Dziubinski be disciplined.  On March 29, a sergeant responded that the incident was under review by AID, and Capt. Moyer signed the response as the division commander.  Doc. 99-1 at 32.

Meanwhile, on January 26, Det. Edwin Belvis, who is a corporal in the Detention Investigations Unit, was assigned to investigate the battery that McCants

---

[6] The AID's file on the investigation into McCants's complaint was 110 pages long.  It is not a part of the record.  Doc. 94-6 at 2.

was alleged to have committed against Dep. Jordan.  Doc. 94-7 at 1.  His

investigation included gathering and reviewing videos and photographs and

interviewing witnesses, including a post-*Miranda* interview of McCants.  *Id.*

Det. Belvis memorialized that investigation in a nine-page report.  Doc. 94-3 at 1–9.

     Det. Belvis ultimately arrested McCants and criminally charged him with

battery on a law enforcement officer.  Doc. 94-7 at 14.  McCants later pleaded to,

and was adjudicated guilty of, the lesser-included offense of assault.  Doc. 32-2.  He

was sentenced to time served.  *Id.* at 3.

### C.    McCants's Injuries

     McCants testified that Dep. Jordan stuck his finger in McCants's *left* eye

during the struggle, and that, as a result, he had blurry vision for a week or two and a

bloodshot eye.  Doc. 94-2 at 96–97 and 112–116.  One photograph appears to show

minor redness in his *right* eye.[7]  Doc. 94-4 at 5.

     McCants also testified that his "back got discombobulated" and that a "disc

got slipped in [his] back."  Doc. 94-2 at 112 and 114.  On February 5, an x-ray of

McCants's lumbar spine was conducted.  That x-ray revealed "normal alignment of

the lumbar spine" and "no fracture or subluxation."  Doc. 94-3 at 23.  McCants

confirmed that no one ever told him that his back problems resulted from the use of

force on January 21.  Doc. 94-2 at 131.  The following year, on March 25 and

---

[7] The Court declines to credit this testimony because McCants contradicts himself regarding which eye was injured, and this testimony not substantiated by "uncontroverted video evidence."  *Mathis v. Adams*, 577 F. App'x 966 (11th Cir. 2014).

August 16, 2017, McCants complained of back spasms that resulted from the use of force on January 21, 2016, and requested medical treatment.  Doc. 99-1 at 30–31. Finally, McCants testified that he suffered "head injuries" and was "knocked out."[8] Doc. 94-2 at 115.

## II.     STANDARD OF REVIEW

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To shoulder this burden, the moving party can present evidence to this effect.  *Id.* at 322–23.  Or, it can show that the nonmoving party failed to present evidence in support of an element of its case on which it bears the burden of proof.  *Id.*

---

[8] Nothing in the record substantiates McCants's testimony that he lost consciousness or had a head injury as a result of the use of force.

9

If the moving party meets its burden, the nonmoving party must "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (citations omitted).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

"Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011)[9] (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

A court ruling on a motion for summary judgment must draw all justifiable factual inferences from the evidence in the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Although "*pro se* complaints are entitled to a liberal interpretation, . . . a *pro se* litigant does not escape the essential burden . . .

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

of establishing that there is a genuine [dispute] as to a fact material to his case." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, when a court has the benefit of reviewing a videotape of the incident at issue, as is the case here, the court should "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Mathis v. Adams*, 577 F. App'x 966 (11th Cir. 2014) ("In light of the uncontroverted video evidence, the district court was required to view the facts in the light depicted by the video even if [the plaintiff's] allegations contradicted its depiction.").

## III.   DISCUSSION

### A.   Motion for Summary Judgment filed by Defendant Sheriff's Office Administrative Investigation Division (Doc. 93)

Defendant Sheriff's Office Administrative Investigation Division ("AID") moved separately for entry of summary judgment. McCants did not respond in opposition to the motion, although he had sufficient opportunity to do so. Accordingly, the Court considers the motion unopposed.

McCants alleges that he filed a complaint with the AID and that the "AID persistently fails to discipline there [sic] employees, which has become a normal standard and widespread practice within the Pinellas County Jail." Doc. 31 at 5. At

his deposition, McCants explained his claim against AID, testifying "there was a lot of excessive force going on inside the county, and a lot of officers getting away with it without being disciplined for their wrongful acts."  Doc. 94-2 at 18.

AID is entitled to summary judgment because it is not a legal entity subject to suit.  To state a viable Section 1983 claim, the defendant being sued must be an entity that is subject to being sued.  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  The capacity of a party to be sued is "determined by the law of the state in which the district court is held."  *Id.* at 1214.   "[N]o provision [in Florida] is made constitutionally or statutorily for a 'Sheriff's Office' as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Office or Department given authority to be sued in such a name."  *Oates v. Jackson County Sheriff's Office*, No. 5:09-cv-303, 2010 WL 785657, at *2 (N.D. Fla. Mar. 4, 2010); *see also Dean*, 951 F.2d at 1214 ("Sheriff's departments . . . are not usually considered legal entities subject to suit.").

Similarly, component parts or bureaus of a Sheriff's Office, such as AID, are not amenable to suit under Section 1983.  *Monroe v. Charlotte County Jail*, No. 2:15-cv-729-FtM-99MRM, 2015 WL 7777521, at *4 (M.D. Fla. Dec. 3, 2015) ("The jail is not an actionable legal entity because it does not enjoy a separate legal existence independent of the County or the Sheriff's Office."); *Mellen v. Florida*, No. 3:13-cv-1233-J-34PDB, 2014 WL 5093885, at *8 (M.D. Fla. Oct. 9, 2014) (recognizing that sheriff's offices and jail facilities are not amenable to suit under § 1983); *Donovan v.*

*Parker*, No. 6:10-cv-855, 2010 WL 3259717, at *2–3 (M.D. Fla. Aug. 16, 2010) (finding that a sheriff's office and detention center have no capacity to be sued).

"For claims against a sheriff's department, the appropriate defendant is the Sheriff in his official capacity." *Oates*, No. 5:09-cv-303, 2010 WL 785657, at *2. In his original complaint, McCants named both Sheriff Bob Gualtieri and AID as separate defendants. Doc. 1. The Court dismissed Sheriff Gualtieri from the case *sua sponte* under 28 U.S.C. § 1915A because McCants attempted to hold Sheriff Gualtieri liable under the theory of *respondeat superior*, which is not actionable in Section 1983 complaints. Doc. 5 at 4. The amended complaint does not contain a claim for relief against Sheriff Gualtieri, and he is no longer a party to this suit.

Additionally, AID is entitled to summary judgment because McCants failed to assert a cognizable claim against the entity. McCants's only allegations against this defendant are that he filed a complaint with AID and that AID's failure to discipline its employees is a widespread practice. McCants failed to assert any claim for relief against AID. Nor does he allege any facts that could establish AID's liability. His general assertion that AID failed to discipline its employees is unsupported in the record and insufficient to survive summary judgment.[10] *Brown*, 906 F.2d at 670 ("[A] *pro se* litigant does not escape the essential burden . . . of establishing that there is a genuine [dispute] as to fact material to his case[.]").

---

[10] McCants filed affidavits by inmates Prachak Khamdaranikone, Brice D. Wright, and Germaine Harris, in which they generally state that they witnessed detention officers beat and abuse prisoners in the Pinellas County Jail. Doc. 99-1 at 44–48. These affidavits do not contain any details specific to McCants's claims, nor do they raise a genuine dispute of material fact on any of McCants's claims.

Accordingly, AID is entitled to entry of summary judgment because (1) its summary judgment motion is unopposed, (2) AID is not a legal entity subject to suit, and (3) McCants failed to assert a cognizable claim for relief against AID.

### B. Motion for Summary Judgment filed by Captain Amy Moyer, Lieutenant Christine Cuttitta, and Det. Edwin Belvis (Doc. 94)

McCants's only claim for relief against defendants Capt. Amy Moyer, Lt. Christine Cuttitta, and Det. Edwin Belvis is for conspiracy under the Fourteenth Amendment, made actionable by 42 U.S.C. § 1985. Doc. 31 at 2 (citing Section 1985 as the basis for the conspiracy claim). These defendants moved together for entry of summary judgment on the conspiracy claim, and McCants opposes the motion.

McCants alleges that Capt. Moyer and Lt. Cuttitta "failed to prevent when they both had knowledge of the various wrongs conspired to be done," and that they "possessed the power to prevent or aid in preventing them to be done, but instead overlook[sic] it and did nothing." Doc. 31 at 13. At his deposition, McCants explained his claim against Capt. Moyer, testifying that she did not handle his grievances properly as the investigator in the grievance process, and that if she had done so, he would not have been charged with battery on a law enforcement officer. Doc. 94-2 at 16–17. He testified, "I feel like she didn't review the DVR footage and review statements correctly to be able to prevent the wrongdoings." *Id.* at 16. Similarly, he explained his claim against Lt. Cuttitta testifying, "[s]he didn't prevent it, stop it, or aided me in helping me not being charged falsely by false allegations

that they made inside their police reports when she had the knowledge and evidence to stop it and prevent it." *Id.* at 14.

McCants alleges that Det. Belvis "conspired with the other defendants and wrote false statements within the police reports that he viewed [McCants] strike Jordan." Doc. 31 at 7.  He alleges that "the DVR footage never shows me hitting Jordan like they all say within their police reports" and that "Belvis then arrested [him] for battery on [a law enforcement officer]." *Id.*  He alleges that Belvis and the other defendants "conspired to cover-up the excessive force by writing false statements within their police reports." *Id.* at 13.  At his deposition, McCants confirmed that his only allegation against Belvis was that he falsely reported that McCants battered Dep. Jordan.  Doc. 94-2 at 13–14.

To prevail on a Section 1985 conspiracy claim, a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997).  A panel of the Eleventh Circuit recently explained the requirements of a Section 1985 conspiracy claim:

> Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to

do." 42 U.S.C. § 1986. Thus, "[t]he text of § 1986 requires the existence of a § 1985 conspiracy." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). Section 1985, in turn, provides a cause of action against anyone who, among other things, conspires for "the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws," 42 U.S.C. § 1985(2), or for the purpose of depriving "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3). Both of these provisions "require[] an allegation of class-based animus for the statement of a claim." *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002) (concerning § 1985(2)); *Park*, 120 F.3d at 1161–62 (concerning § 1985(3)).

*Grappell v. Carvalho*, 2021 U.S. App. LEXIS 6043, at * 4–5 (11th Cir. Mar. 2, 2021) (affirming the dismissal with prejudice of §§ 1985 and 1986 claims because the plaintiff failed to plead that the alleged wrongdoing was motived by racial or class-based animus and the existence of a joint agreement between the defendants). Importantly, the plaintiff must show "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private as well as official encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–78 (1993) (citations and alterations omitted).

The record contains no evidence, beyond McCants's vague and conclusory accusations, of an agreement among any of the defendants to falsely report that McCants hit Dep. Jordan in order to cover up the use of excessive force by deputies on January 21, 2016. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("In conspiracy cases, . . . [i]t is not enough to simply aver in the complaint that a

conspiracy existed."). McCants merely makes the conclusory allegation that Capt. Moyer and Lt. Cuttitti had "knowledge" and "evidence" of "wrongs conspired to be done," but failed to prevent them. He also vaguely alleges that Det. Belvis "conspired and wrote false statements within his reports." However, beyond these conclusory assertions, McCants presents no evidence of a conspiratorial agreement among any of the defendants. "[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment." *Id.* (noting that "one of the purposes of the summary judgment mechanism . . . is to unmask frivolous claims and put a swift end to meritless litigation").

Furthermore, McCants does not allege, and the record does not contain any evidence, "that the defendants' allegedly wrongful conduct . . . was motivated by racial or class-based animus." *Grappell*, 2021 U.S. App. LEXIS 6043, at * 6. There is simply no evidence of the required class-based animus.[11] *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (affirming summary judgment on a Section 1985

---

[11] McCants filed the unsworn affidavit of Alexis Green in support of his opposition to summary judgment. Doc. 97 at 22. Green, whose relationship to McCants is unknown, was not present for the events at issue in this case; rather, she viewed the DVR footage of the incident, read officer statements, and emailed Lt. Cuttitta about the incident. Green describes what she viewed in the DVR footage. She also states that Lt. Cuttitta failed to respond properly to the incident and the officers' false reports about the incident. The affidavit does not contain any evidence of a conspiratorial agreement among the defendants or class-based animus, nor does it raise a genuine dispute of material fact concerning any of McCants's claims.

McCants also filed email correspondence between his mother and Lt. Cuttitta. Doc. 97 at 16–20. In these emails, Lt. Cuttitta notified McCants's mother that an AID investigation into her complaint had been initiated. McCants's mother notified Lt. Cuttitta that that battery on law enforcement officer charge against McCants had been dismissed. The email correspondence does not contain any evidence of a conspiratorial agreement among the defendants or class-based animus, nor does it raise a genuine dispute of material fact concerning any of McCants's claims.

conspiracy claim when "there was no evidence of concerted action" and the record did not "reflect any racial or class-based animus."  Accordingly, Capt. Moyer, Lt. Cuttitta, and Det. Belvis are entitled to summary judgment on McCants's Section 1985 conspiracy claim.[12]

### C.   Motion for Summary Judgment of Sergeant Dziubinski and Deputies Jordan, Taylor, and Kinsley (Doc. 95)

McCants alleges that Deputies Jordan, Taylor, and Kinsley used excessive force when he was not resisting their attempt to restrain him, while Sergeant Dziubinski failed to intervene to stop the excessive force.  He also alleges that Dep.

---

[12] McCants's claim fares no better if it is construed under 42 U.S.C. § 1983.  "To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015).  Again, there is no evidence of a conspiratorial agreement among the defendants to violate McCants's constitutional rights.

Alternatively, McCants cannot sustain a Section 1983 claim against defendants Moyer, Cuttitta, and Belvis because he did not file grievances against these defendants, and therefore, failed to exhaust his administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("[A]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.").

"The [Prison Litigation Reform Act]'s exhaustion requirement serves to provide prison officials the opportunity to resolve complaints internally before being subject to suit, reduce litigation to the extent complaints are satisfactorily resolved, and improve the litigation that does occur by creating an administrative record."  *Nolley v. Warden*, 820 F. App'x 845, 853 (11th Cir. 2020) (affirming dismissal when the plaintiff never filed a grievance).  "To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison."  *Id.*  "The prison's requirements, rather than the PLRA, dictate the level of detail necessary for proper exhaustion."  *Id.*

McCants does not dispute that he did not file grievances against these defendants.  Rather, he argues that administrative remedies were unavailable to him because (1) the AID "froze" the matter and (2) once he was transferred to prison, he could not pursue a grievance because the prison "has a different system."  Doc. 97 at 8.  These arguments are unsupported in the record, and he fails to explain why he did not employ the prison grievance process.

Jordan's use of force violated his First Amendment free speech rights because the use of force was in retaliation for McCants submitting a witness statement against him in connection with a prior incident.  Finally, he alleges that these defendants conspired to cover-up the excessive force by falsely reporting that he struck Dep. Jordan during the January 21, 2016 incident.[13]  Defendants Sgt. Dziubinski and Deputies Jordan, Taylor, and Kinsley together moved for entry of summary judgment on all of these claims, asserting a qualified immunity defense.  McCants opposes their motion.

### 1.  Excessive Force and Failure to Intervene

Preliminarily, McCants argues that the defendants rely upon the wrong legal standards.  Doc. 99 at 12.  "[T]he first step in any § 1983 analysis requires identification of the precise right that is alleged to have been violated."  *Alcocer v. Mills*, 906 F.3d 944, 947 (11th Cir. 2018) (citations omitted).  "Different rights prescribe different legal analyses, so accurately diagnosing the right at issue is critical to properly analyzing a § 1983 plaintiff's claims."  *Id.*  Furthermore, "[f]ederal courts have long recognized that they have an obligation to look behind the label of a [pleading] filed by a *pro se* inmate and determine whether [it] is, in effect, cognizable under a different remedial statutory framework."  *Gooden v. United States*, 627 F.3d

---

[13] The amended complaint also contained claims for false arrest, malicious prosecution, assault, and battery.  McCants voluntarily dismissed his false arrest and malicious prosecution claims.  Doc. 41 at 3–4.  McCants appears to have abandoned his assault and battery claims; nevertheless, McCants cannot proceed on these claims because "as a matter of law, the state torts of assault and battery are not a cognizable basis for a § 1983 claim."  *Brown v. Hillsborough County Sheriff's Office*, No. 8:08-cv-88-T-33TGW, 2009 U.S. Dist. LEXIS 16735, at *9 (M.D. Fla. Feb. 18, 2009).  Alternatively, these claims lack merit for the same reasons explained herein that apply to McCants's excessive force claims.

846, 847 (11th Cir. 2010) (citation omitted).  *Castro v. United States*, 540 U.S. 375, 381–82 (2003) (citations omitted), instructs that the purpose for looking beyond the label a *pro se* litigant attaches to a pleading is "to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* [pleading]'s claim and its underlying legal basis."

McCants asserts his excessive force and failure to intervene claims under the Fourth and Fourteenth Amendments.  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  The Eighth Amendment provides a freedom from cruel and unusual punishments, and it "serves as the primary source of protection against excessive force after conviction."  *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (citations omitted).  And, the Fourteenth Amendment "protects those who exist in the in-between—pretrial detainees."  *Id.*  Here, McCants asserts (and the defendants do not dispute) that he was a pretrial detainee in the Pinellas County Jail, when the alleged excessive force occurred.  Therefore, his claims must be analyzed under the Fourteenth Amendment.  *Mathews v. Wetherbee*, 2020 U.S. App. LEXIS 40839, at *2 (11th Cir. Dec. 31, 2020) ("[A] pretrial detainee has a right under the Fourteenth Amendment to not be exposed to excessive force.").

"Qualified immunity . . . protects a defendant from liability in a § 1983 claim arising from discretionary acts, as long as those acts do not violate clearly established . . .

constitutional rights of which a reasonable person would have known." *Id.* (citations omitted). McCants does not appear to dispute that the defendants were performing discretionary acts during the events giving rise to his claims (and therefore has abandoned any argument to the contrary); rather, his argument is focused on the second part of the analysis. Nevertheless, the Court concludes that the defendants' conduct of restraining McCants while he resisted instructions to pick up his belongings, proceed down the hallway, and relocate to another cell falls within the scope of their discretionary authority. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (defining discretionary function as an official act that "[falls] within the employee's job responsibilities"); *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (defining discretionary authority broadly to include all acts undertaken in performance of duties within scope of official's authority). Therefore, the burden shifts to McCants to demonstrate a violation of his clearly-established constitutional rights. *Mathews*, 2020 U.S. App. LEXIS 40839, at * 2 ("Once an official demonstrates that he was performing a discretionary function, the plaintiff must show that the defendant is not entitled to summary judgment on qualified immunity grounds.").

"To show that a defendant is not entitled to summary judgment on qualified immunity grounds, the plaintiff must show that a reasonable jury could find both that the defendant violated a constitutional right and that the constitutional right was clearly established." *Id.* at *3. "[A] right may be clearly established for qualified immunity purposes through: (1) case law with indistinguishable facts clearly establishing a

constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) the conduct was so egregious that a constitutional right was clearly violated, even in the complete absence of case law." *Id.* "Exact factual identity with a previously decided case is not required," but rather, the key inquiry is whether the law provided the official with "fair warning" that his conduct violated the constitution. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citations omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citations omitted). "However, if there is no caselaw directly on point, general statements of the law and the reasoning of prior cases may provide fair warning of unlawful conduct if they 'clearly apply' to the novel factual situation at issue." *Mathews*, 2020 U.S. App. LEXIS 40839, at * 4 (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).

"To determine whether a pretrial detainee's right to be free from the use of excessive force under the Fourteenth Amendment has been violated, he must show that the force used against him was objectively unreasonable, which is a fact-specific inquiry." *Id.* at *4 (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "'A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight,' taking into account the government's need to manage the facility and deferring to policies and practices officials use to preserve order, discipline, and security." *Id.* at *4 (citing *Kingsley*, 576 U.S. at 397). "Considerations in determining the reasonableness of force include: the relationship between the need for force and amount used; the extent of the

injury; efforts made by the officer to limit the amount of force; the severity of the security problem; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at * 4–5 (citing *Kingsley* factors). "*Kingsley* directs [the courts] to weigh the relationship between the need for the use of force and the amount of force used." *Patel v. Lanier Cty. Ga.*, 969 F.3d 1173, 1183 (11th Cir. 2020) (citation omitted).

"In cases with multiple named defendants, each defendant is entitled to an independent qualified immunity analysis as it relates to his actions." *Mathews,* 2020 U.S. App. LEXIS 40839 at *2.

### a.    Deputy Jordan

Dep. Jordan and McCants were engaged in a heated verbal exchange, while McCants was being escorted by the deputies without handcuffs down the hallway. Dep. Jordan repeatedly gestured in the direction McCants was to proceed. McCants stopped walking, dropped his property to the ground, and turned to face Dep. Jordan.  McCants refused to comply with Dep. Jordan's instruction to pick up his belongings, even after Dep. Jordan warned McCants that he was going to "count down," if he refused.  Dep. Jordan delivered five closed-fist strikes and multiple knee strikes and deployed his taser on McCants.  Eventually, the deputies succeeded in subduing McCants, and Dep. Jordan assisted in placing McCants into a restraint chair.

Dep. Jordan's use of force was not unconstitutional. Applying the *Kingsley* factors, the amount of force he used did not outweigh the need for the force.  During a heated verbal exchange, McCants was actively resisting Dep. Jordan's instructions

to continue down the hallway, dropped his belongings, and turned to face Dep. Jordan.  Approximately fourteen seconds passed, from when McCants dropped his belongings until the use of force began, during which time he had an opportunity to comply with Dep. Jordan's instructions, but refused.  McCants posed a threat to Dep. Jordan because they were engaged in a heated verbal exchange that escalated when McCants dropped his belongings and turned to face Dep. Jordan.  Dep. Jordan applied force by striking McCants five times, delivering multiple knee strikes, and tasering him.  This force occurred only after verbal attempts to gain McCants's compliance failed and McCants continued to resist.  Furthermore, although McCants vehemently disputes that he hit Dep. Jordan during the struggle, whether he did so is immaterial because McCants continued to resist and because his conduct was, at a minimum, an assault:  McCants pleaded to, and was adjudicated guilty of, that crime.

The record shows the extent of McCants's injuries was minimal, and he requested medical treatment for his back in only one of his multiple grievances.  The record also shows that Dep. Jordan attempted to limit the amount of force because once McCants stopped resisting and the deputies gained control of him, Dep. Jordan stopped applying force.  And, the duration of the use of force was about twenty seconds.  This is not a case where officers continued to apply force after an inmate was no longer resisting.  *See Piazza*, 923 F.3d at 953 (noting that once the prisoner stops resisting there is no longer a need to apply force).  Rather, despite McCants's assertions to the contrary, the video recording of the incident shows that McCants

was continuing to resist, and that the use of force stopped once the deputies obtained control over him.  "Although [the court] review[s] the evidence in the light most favorable to [McCants] (the non-moving party), [the court does] not accept his version of the facts when obviously contradicted by the record," including "a video of the entire event." *McCroden v. Cty. of Volusia*, 724 F. App'x 768, 771 (11th Cir. 2018).

Additionally, it was not clearly established in January of 2016 that Dep. Jordan's use of force was unconstitutional.  McCants cites numerous cases to set forth the applicable legal standards for qualified immunity in this context.  However, he has not "point[ed] to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show that the alleged constitutional violation was clearly established at the time of the events in question.  *Mercado*, 407 F.3d at 1159.  None of the cases McCants cites is "materially similar to the facts in this case or truly compels the conclusion that [McCants] had a right established under [the law]."  *Id.* (citations omitted).

To the contrary, cases instruct that officers may use force to restrain a resisting inmate.  *See e.g., Piazza*, 923 F.3d at 955 (noting that "we don't question [the officer's] split-second decision to deploy his taser once following several unsuccessful attempts to lead [the plaintiff] into his cell" but finding the second taser was excessive because the first taser immobilized the plaintiff); *McCroden*, 724 F. App'x at 771 (affirming qualified immunity when the officers used an "arm-bar takedown" to restrain a resisting prisoner); *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1351, 1355

(11th Cir. 2015) (in a Fourth Amendment case, concluding officers' use of force in striking, kicking, and tasing the suspect was not excessive where the suspect, though pinned on the ground, was "refusing to surrender his hands to be cuffed");

*Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) (in a Fourth Amendment case, concluding that "in a difficult, tense and uncertain situation the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force") (citations omitted).  Accordingly, Dep. Jordan is entitled to qualified immunity on McCants's excessive force claim.

### b.   Deputy Taylor

Deputy Taylor escorted McCants, along with the other deputies, down the hallway.  He did not engage in the verbal exchange between McCants and Dep. Jordan. He delivered multiple knee strikes to McCants, once deployed his taser, and assisted in placing McCants in the restraint chair.

Deputy Taylor's use of force was not unconstitutional.  Again, applying the *Kingsley* factors, Dep. Taylor's use of force did not outweigh the need for the force. Dep. Taylor observed McCants actively resisting Dep. Jordan's repeated instructions to continue down the hallway, dropping his belongings, and turning to face Dep. Jordan.  Dep. Taylor perceived the threat that McCants posed when he dropped his belongings and turned to face McCants. When McCants continued to resist Dep. Jordan's commands, Dep. Taylor assisted in gaining McCants's compliance by applying multiple knee strikes and deploying his taser.  This force occurred only after

26

verbal attempts to gain McCants's compliance failed, and once the deputies obtained control over McCants, the use of force stopped.  McCants's injuries were minimal.

Additionally, it was not clearly established in January of 2016 that Dep. Taylor's use of force was unconstitutional.  Again, McCants has not cited any authority that demonstrates that Dep. Taylor was on notice that his use of force violated clearly-established law.  Instead, cases show that officers may use force to restrain a resisting inmate.  Accordingly, Dep. Taylor is entitled to qualified immunity on McCants's excessive force claim.

### c.   Deputy Kinsley

Deputy Kinsley escorted McCants, along with the other deputies, down the hallway.  He did not engage in the verbal exchange between McCants and Dep. Jordan.  The record does not show that Deputy Kinsley delivered any hits or knee strikes, nor that he tased McCants.  Rather, the record shows that Dep. Kinsley assisted the other deputies by taking control of McCants's arm and attempting to re-direct him to the floor.  Dep. Kinsley placed McCants in handcuffs and shackles and assisted in placing him in the restraint chair.  McCants does not point to any specific use of force applied by Dep. Kinsley that violated his constitutional rights.

Deputy Kinsley's use of force was not unconstitutional. Applying the *Kingsley* factors, Dep. Kinsley's minimal use of force did not outweigh the need for force, when McCants was actively resisting the deputies.  Additionally, it was not clearly established in January of 2016 that Dep. Kinsley's use of force, in assisting the deputies by taking control of McCants's arm and placing McCants in handcuffs,

27

shackles, and later, a restraint chair, was unconstitutional.  McCants has not cited any authority that demonstrates that Dep. Kinsley was on notice that his use of force violated clearly-established law.  Instead, cases show that officers may use force to restrain a resisting inmate.  Accordingly, Dep. Kinsley is entitled to qualified immunity on McCants's excessive force claim.

### d.   Sergeant Dziubinski

Finally, McCants contends that Sgt. Dziubinksi had a duty to intervene when Deputies Jordan, Taylor, and Kinsley used excessive force on him.  Sgt. Dziubinski arrived moments before the use of force occurred.  Although the defendants contend Sgt. Dziubinski did not have an opportunity to intervene because he arrived after the use of force began, Sgt. Dziubinski's own report of the incident contradicts that assertion.  Throughout the struggle, Sgt. Dziubinksi remained close to the deputies as they tried to take hold of McCants.  He prepared to deploy his taser, but ultimately did not do so.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."  *Byrd*, 783 F.2d at 1007. Furthermore, "that a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994."  *Helm v. Rainbow City*, __ F.3d__, 2021 U.S. App. LEXIS 6929, at * 27 (11th Cir. Mar. 10, 2021) (published opinion) (citing *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).  "Of course, there also must be an underlying

constitutional violation.  Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed."  *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (citations omitted) (noting that "the failure to intervene claim is . . . wholly dependent on the underlying excessive force claim").  Because the deputies did not use excessive force on McCants, there can be no derivative failure to intervene claim against Sgt. Dziubinski.[14]

It follows that it was not clearly established in January of 2016 that Sgt. Dziubinski was required to intervene under the circumstances of this case.  No precedent would have put Sgt. Dziubinski on notice that he was constitutionally obligated to intervene with the deputies' attempts to restrain a resisting prisoner.  Accordingly, Sgt. Dziubinski is entitled summary judgment because no underlying unconstitutional conduct occurred that would support McCants's failure to intervene claim against him.  And, Sgt. Dziubinski is entitled to qualified immunity on McCants's failure to intervene claim.

### 2.    First Amendment Retaliation Claim

McCants also alleges that Dep. Jordan violated his First Amendment free speech rights by retaliating against him for submitting a witness statement against him in connection with a prior incident.  "The First Amendment forbids prison

---

[14] McCants's claims against Sgt. Dziubinski and Dep. Kinsley are barred for the additional reason that he failed to exhaust his administrative remedies against these defendants.  McCants does not dispute that he failed to file a grievance against Dep. Kinsley and failed to appeal the denial of his grievance against Sgt. Dziubinski.  Rather, he argues that administrative remedies were unavailable to him because (1) the AID "froze" the matter and (2) once he was transferred to prison, he "was unable to really pursue" a grievance.  Doc. 99 at 14.  These arguments are unsupported in the record, and he fails to explain why he did not employ the prison grievance process.

officials from retaliating against prisoners for exercising the right of free speech."
*Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  To prevail on a retaliation

claim, the inmate must establish that: "(1) his speech was constitutionally protected;

(2) the inmate suffered adverse action such that the [deputy]'s allegedly retaliatory

conduct would likely deter a person of ordinary firmness from engaging in such

speech; and (3) there is a causal relationship between the retaliatory action and the

protected speech."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  Regarding

the causation prong, the court "asks whether the defendants were subjectively

motivated" by the plaintiff's protected act.  *Id.* at 1278.  To establish causation, a

plaintiff must "do more than make general attacks on a defendant's motivations and

must articulate affirmative evidence of retaliation to prove the requisite motive."

*Jackson v. Warden*, No. 16-16107-E, 2018 U.S. App. LEXIS 34417, at *2 (11th Cir.

Dec. 6, 2018) (citations omitted).  A temporal relationship between the protected

activity and adverse action can constitute circumstantial evidence of causation, but in

the absence of other evidence, "temporal proximity must be very close."  *Hidgon v.*

*Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

The record shows that, on September 7, 2015, approximately four months

before the use-of-force incident at issue here, McCants provided a witness statement

to prison authorities, as a part of an excessive force investigation, in which he

reported that Dep. Jordan tased another inmate while the inmate was asleep.

However, the record is devoid of any evidence from which a reasonable fact finder

could infer retaliation as the motivating factor for Dep. Jordan's use of force four

months later.  Rather, the record shows that Dep. Jordan applied force in order to restrain McCants who was defying his commands.  McCants makes nothing more than a conclusory allegation that Dep. Jordan was motivated to "get [McCants] back for 'snitching' on him."  Doc. 31 at 4.  The lapse of time between the two events cuts against a causal connection.  Accordingly, Dep. Jordan is entitled to summary judgment on McCants's retaliation claim.

### 3.     Conspiracy Claim

Finally, McCants alleges that Sgt. Dziubinski and Deputies Jordan, Taylor, and Kinsley conspired to cover-up the use of excessive force by falsely reporting that he hit Dep. Jordan during the January 21, 2016 incident.  This conspiracy claim fails because the record contains no evidence, beyond McCants's vague and conclusory allegations, of a conspiratorial agreement among any of the defendants.  McCants merely argues that that these defendants "clearly reached an understanding to write the false statement" because the video does not show him striking Dep. Jordan. Doc. 99 at 18.  Whether these defendants were incorrect or lied when they reported that McCants hit Dep. Jordan is immaterial because there is no evidence of an agreement among them to do so.[15]  Accordingly, Sgt. Dziubinski and Deputies Jordan, Taylor, and Kinsley are entitled to entry of summary judgment on McCants's conspiracy claim.

---

[15] McCants's conspiracy claim against Dep. Taylor fails for the additional reason that, contrary to McCants's assertions, he did not report that McCants hit Dep. Jordan.  Doc. 94-7 at 4.

## IV.    CONCLUSION

For the foregoing reasons, the following motions are hereby **GRANTED**: Motion for Summary Judgment of the Sheriff's Office Administrative Investigation Division (Doc. 93), Motion for Summary Judgment of Captain Amy Moyer, Lt. Christine Cuttitta, and Det. Edwin Belvis (Doc. 94), and Motion for Summary Judgment of Sergeant Dziubinski and Deputies Jordan, Taylor, and Kinsley (Doc. 95).  The Clerk is directed to enter final judgment in favor of defendants William Jordan, Dawon Taylor, Dariel Kinsley, Sean Dziubinski, Edwin Belvis, Christine Cuttitta, Amy Moyer, and Sheriff's Office Administrative Investigation Division. All of McCants's claims against all defendants have been resolved; therefore, the Clerk is directed to **CLOSE** this case.

DONE and ORDERED in Chambers in Tampa, Florida, this 21st day of April, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE